UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WPX ENERGY, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | |
| BAKER HUGHES OILFIELD | § | |
| OPERATIONS, INC. | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff, WPX ENERGY, INC., and files this Original Complaint seeking a declaratory judgment against Defendant BAKER HUGHES OILFIELD OPERATIONS, INC. and would show the following:

## PARTIES

1. Plaintiff, WPX ENERGY, INC. ("WPX") is a foreign corporation incorporated in the State of Oklahoma, having its principal place of business in Tulsa, Oklahoma.

2. Defendant, BAKER HUGHES OILFIELD OPERATIONS, INC. ("Defendant"), is a foreign corporation conducting business in Texas with its principal place of business in Texas located in Houston, Texas.  Defendant can be served with process through its registered agent, CT Corporation System, which is located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.  Service is requested at this time.

## JURISDICTION

3. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff is an Oklahoma corporation and Defendant is a California corporation

conducting business in Texas with its principal place of business in Texas located in this District.  The amount in controversy exceeds $75,000.00, excluding interests and costs.

## VENUE

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(3) because Defendant's principal place of business in Texas is located in this District.

## BACKGROUND

5.      On March 3, 2005, Williams Production RMT Company, LLC, a former wholly-owned subsidiary of WPX, entered into a Master Services Agreement ("MSA") with Defendant.  *See* MSA attached hereto as Exhibit "A"; *see also* Affidavit of Stephen E. Brilz attached hereto as Exhibit "B".

6.      The MSA contains the following pertinent definitions:

    1.1.    **"Affiliate(s)"** means, with respect to any person or entity, any other person or entity directly or indirectly controlling, controlled by, or under common control with such person or entity.  For purposes of this definition, **"control",** when used with respect to any person means the power to direct the management and policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms **"controlling"** and **"controlled"** have meanings correlative to the foregoing.

    1.4     **"Claims" shall mean any and all claims, demand, causes of action, damages, losses, liabilities, judgments, fines, awards, costs, penalties and expenses, (including, without limitation, attorneys' fees and expenses and costs of litigation), of any kind or character arising out of, or related to, the performance of or subject matter of this Master Agreement or any Request for Services, including, without limitation, property loss, destruction or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society.**

    1.5     **"Company"** shall mean **Williams Production RMT Company.**

    1.6     **"Company Group" shall mean (i) Company, its parent, subsidiary and Affiliates or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint**

**operators, and joint venturers, if any, and their respective parents, subsidiary and affiliated or related companies, and (iii) the officers, directors, employees, agents, consultants and invitees of all the following.**

1.7 **"Contractor"** shall collectively mean **Baker Hughes Oilfield Operations, Inc.,** and **Baker Petrolite Corporation,** each on behalf of itself and its direct and indirect wholly owned subsidiaries (specifically excluding Baker Hughes Pipeline Management Group, Inc.).

1.8 **"Contractor Group" shall mean: (i) Contractor, its parent, subsidiary and Affiliates or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint operators, and joint venturers, if any, and their respective parents, subsidiary and affiliated or related companies, and (iii) the officers, directors, employees, agents, consultants and invitees of all the following.**

7. Concerning indemnification obligations, the MSA contains the following language:

   **19.2 To the maximum extent permitted by Applicable Law, Contractor shall release, protect, indemnify, defend and hold harmless Company Group from and against all Claims, brought by, through or derived from any member of Contractor Group or Contractor Group's subcontractors or their employees, agents, consultants or invitees.**

   **19.6 <u>The assumptions and exclusions of liability, releases and indemnities set forth in this Section 19 shall apply to any Claim(s) without regard to the cause(s) thereof including, without limitation, pre-existing conditions, whether such conditions be patent or latent, the unseaworthiness of any vessel or vessels, imperfection of material, defect or failure of equipment, breach of representation or warranty (express or implied), ultrahazardous activity, strict liability, tort, breach of contract, breach of statutory duty, breach of any safety requirement or regulation, or the negligence of any person or party, including the indemnified party or parties, whether such negligence be sole, joint and/or concurrent, active or passive, or any other theory of legal liability.</u>**

8. Regarding what law governs the MSA, the MSA states:

> **39. GOVERNING LAW.** THE PARTIES TO THIS MASTER SERVICE AGREEMENT AGREE THAT THE VALIDITY, CONSTRUCTION, ENFORCEMENT, INTERPRETATIONS AND THE RIGHTS AND OBLIGATIONS ARISING UNDER THIS MASTER AGREEMENT SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS, WITHOUT GIVING EFFECT TO ANY CONFLICTS OF LAWS OR CHOICE OF LAW PRINCIPLES THEREOF.

9. Subject to the terms and conditions of the MSA, Defendant and its employee, Victor Munoz ("Munoz"), were working on WPX's well site on August 16, 2015 when Munoz was allegedly injured during the course and scope of his employment with Defendant. *See* Munoz's Complaint for Personal Injury attached hereto as Exhibit "C".

10. Because Munoz was Defendant's employee and the purported accident arose out of, related to, or concerned the MSA, Defendant is contractually obligated to protect, defend, indemnify, and save harmless WPX for Munoz's claims against WPX. *See* Exhibit "A"; *see also* Exhibit "C". The MSA also obligates Defendant to provide, at its own expense, liability insurance to cover WPX and provide WPX proof of insurance. *See* Exhibit "A".

11. On January 5, 2016, WPX sent a defense and indemnification tender to Defendant requesting Defendant honor the MSA and fully defend and indemnify WPX for Munoz's claims. *See* January 5, 2016 correspondence attached hereto as Exhibit "D". Defendant did not respond. On April 13, 2016, WPX sent another defense and indemnification tender to Defendant requesting Defendant honor the MSA and fully defend and indemnify WPX for Munoz's claims. *See* April 13, 2016 correspondence attached as Exhibit "E". Again, Defendant did not respond.

12. On April 21, 2017, Munoz filed suit against WPX in the Eleventh Judicial District Court of San Juan County New Mexico in Cause No. D-1116-CV-2017-00532 styled

*Victor Munoz v. WPX Energy, Inc. a New Mexico Corporation and John Doe, individually and in his capacity with WPX Energy, Inc.* See Exhibit "C". Defendant's failure to fully defend and indemnify WPX constitutes a breach of the MSA and has necessitated filing this Complaint.

## REQUEST FOR DECLARATORY JUDGMENT

13.   WPX brings this suit for declaratory judgment under FEDERAL RULE OF CIVIL PROCEDURE 57 and 28 U.S.C. §§ 2201 and 2202. WPX files this action for declaratory judgment seeking a legal determination declaring Defendant is contractually obligated to protect, defend, indemnify, and save harmless WPX for the claims asserted in Cause No. D-1116-CV-2017-00532 styled *Victor Munoz v. WPX Energy, Inc. a New Mexico Corporation and John Doe, individually and in his capacity with WPX Energy, Inc.* filed in the Eleventh Judicial District Court of San Juan County New Mexico.

## ATTORNEYS' FEES

14.   WPX also seeks an award of its costs and reasonable and necessary attorneys' fees incurred herein.

## PRAYER

WPX Energy, Inc. respectfully prays Baker Hughes Oilfield Operations, Inc. be cited to appear and answer herein and upon final trial of this matter WPX Energy, Inc. have judgment in its favor declaring Baker Hughes Oilfield Operations, Inc. is contractually obligated to protect, defend, indemnify, and save harmless WPX Energy, Inc. for the claims asserted in Cause No. D-1116-CV-2017-00532 styled *Victor Munoz v. WPX Energy, Inc. a New Mexico Corporation and John Doe, individually and in his capacity with WPX Energy, Inc.* filed in the Eleventh Judicial District Court of San Juan County New Mexico.

WPX further requests it be awarded its taxable costs of court and reasonable attorneys' fees and that it has such other and further relief to which it is justly entitled.

            Respectfully Submitted,

            DONATO, MINX, BROWN & POOL, P.C.

            */s/ M. Matt Jett*
            M. Matt Jett
            TBN: 24068684/Fed. ID. 1091711
            3200 Southwest Freeway, Suite 2300
            Houston, TX  77027
            Phone:  (713) 877-1112
            Fax:  (713) 877-1138
            mjett@donatominxbrown.com

            **ATTORNEY IN CHARGE FOR**
            **PLAINTIFF WPX ENERGY, INC.**

OF COUNSEL:
DONATO, MINX, BROWN & POOL, P.C.
3200 Southwest Freeway
Phoenix Tower, Suite 2300
Houston, Texas  77027-7525
Phone: 713-877-1112
Fax: 713-877-1138